**David MOSS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–01–00260–CR.**

Court of Appeals of Texas,
San Antonio.

March 13, 2002.

Discretionary Review Refused
July 31, 2002.

Michael D. Robbins, San Antonio, for appellant.

Edward F. Shaughnessy, III, Asst. Criminal Dist. Atty., San Antonio, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, CATHERINE STONE, Justice and SANDEE BRYAN MARION, Justice.

## OPINION

### PHIL HARDBERGER, Chief Justice.

David Moss ("Moss") appeals his conviction for aggravated robbery. In six points of error, Moss argues: (1) the trial court erred in overruling his pre-trial motions relating to his arrest because he was arrested without warrant or probable cause, in violation of the Constitution of the United States; (2) the trial court erred in overruling his pre-trial motions relating to his arrest because he was arrested without warrant or probable cause, in violation of the Constitution of Texas; (3) the trial court erred in overruling his pre-trial motions relating to his statement to police because his statement was not made voluntarily; (4) the trial court erred in overruling his pre-trial motions relating to his statement to police because his statement was made following an illegal arrest, and subsequent circumstances did not attenuate the taint of illegality; (5) the trial court erred in overruling his pre-trial motions relating to the search of the apartment where he was arrested because the search warrant was illegally issued; and (6) the trial court erred in admitting into evidence various weapons because their probative value was substantially outweighed by the danger of unfair prejudice. We affirm the trial court's judgment.

### FACTS & PROCEDURAL HISTORY

On August 13, 1999, at approximately 5:00 P.M., the Golden Wok restaurant ("the Golden Wok") was robbed at gunpoint by two masked black males. The robbers put a gun to the head of Michael Hu, the Golden Wok's manager, and demanded money from the cash register. The robbers stole approximately $200, put the money in a backpack, and exited the restaurant through the back door of the kitchen.

About that same time, Officer Ron Davis ("Officer Davis") of the San Antonio Police Department ("S.A.P.D.") was patrolling northwest San Antonio in the area of Wurzbach and Gardendale, near where the Golden Wok was located. Officer Davis observed two black males, one of whom was Moss, walking behind the Golden Wok towards his patrol car. Officer Davis drove past the two men in the direction of a convenience store on the other side of Gardendale. At that time, a group of people standing at the convenience store began pointing behind his car, toward the two black males, in an animated fashion. Simultaneously, an Asian man ran out of the Golden Wok and frantically pointed at the same two black males. The two individuals then began running towards the Wurzbach Manor Apartments adjacent to the Golden Wok. Officer Davis initially pursued the two suspects on foot, but quickly realized he would be unable to catch up with them. Officer Davis returned to his vehicle and was informed by the police dispatcher that a robbery had just occurred at the Golden Wok.

Shortly thereafter, more S.A.P.D. officers arrived on the scene and set up a quadrant around the Wurzbach Manor Apartments. After talking with the manager of the apartment complex and some children in the complex playground, the officers were able to determine in which individual apartment the two suspects

were located. The officers went to the apartment in question and found Moss and the other suspect inside. Officer Davis identified Moss as one of the men he had seen running from the Golden Wok. After Davis's identification, Moss was arrested and taken into custody. Officer Davis later returned to the Golden Wok and spoke with several eye witnesses to the robbery. The witnesses provided Officer Davis with descriptions of the robbers which matched the description of the two suspects Davis saw fleeing from behind the Golden Wok and found in the apartment complex.

After Moss was taken into custody, the officers conducted a protective sweep of the apartment. Moss told the officers that the apartment was not his. In fact, the apartment belonged to Moss's girlfriend, Kachana Alexander ("Alexander"). The officers then sought a search warrant for the apartment. Based on an affidavit by Detective Joe Morris ("Detective Morris"), a warrant for the apartment was issued by Magistrate Joe Gonzales ("Magistrate Gonzales"). During the search, officers discovered various weapons, including a nine-millimeter pistol. The officers also found cash, concealed in a refrigerator, similar to the amount that had been stolen from the Golden Wok.

Detective James Smith ("Detective Smith") of the S.A.P.D.'s robbery division was assigned the Golden Wok case. The day after Moss was arrested, Detective Smith initiated contact with Moss in the hopes of obtaining a statement relating to the Golden Wok robbery. Detective Smith administered to Moss his statutory rights under Section 38.22 of the Texas Code of Criminal Procedure and questioned him about the robbery. Moss then signed a written statement confessing to the Golden Wok robbery.

Prior to trial, Moss filed numerous evidentiary motions to suppress. Because the motions were all related, the trial court held a hearing on all of the motions together. After three days of testimony, the trial court entered its findings of fact and conclusions of law. The trial court overruled all of Moss's motions. The case was tried to a jury in which Moss was found guilty of aggravated robbery as charged in the indictment. The trial court sentenced Moss to thirty years in prison.

### DISCUSSION

### I. Moss's Arrest

In his first and second points of error, Moss argues that the trial court erred in overruling his motions relating to his arrest because he was arrested without warrant or probable cause, in violation of both the United States and Texas Constitutions. In its findings of fact and conclusions of law, the trial court held that the State had sufficient probable cause to arrest Moss. The trial court further found that Moss's warrantless arrest was justified because he was found in a suspicious place.

 Whether the State had probable cause and whether Moss was found in a suspicious place are questions we review under a *de novo* standard "as they are mixed questions of law and fact and do not turn on an evaluation of credibility and demeanor." *State v. Parson*, 988 S.W.2d 264, 267 (Tex.App.-San Antonio 1998, no pet.). "[A]n appellate court should give deference to the trial court's determination of facts as revealed in the testimony at trial, but review whether, considering those facts, the law was properly applied." *Id.*

 In general, officers must obtain a warrant before arresting someone or taking them into custody. *Id.* at 266. "In Texas, a person may be arrested without a warrant only if (1) there is probable cause, and (2) the arrest falls within the

provision of one of the statutes authorizing a warrantless arrest." *Johnson v. State*, 32 S.W.3d 294, 298 (Tex.App.-San Antonio 2000, pet. ref'd). "The test for determining the existence of probable cause for a warrantless arrest is whether at that moment the facts and circumstances within the officer's knowledge and of which he had sufficient trustworthy information were sufficient to warrant a prudent man in believing the arrested person had committed or was committing an offense." *Id.* "Probable cause deals with probabilities; it requires more than mere suspicion but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence." *Parson*, 988 S.W.2d at 267. "To determine whether probable cause exists, we must look to the totality of the circumstances." *Johnson*, 32 S.W.3d at 298. "[W]hen there has been some cooperation between law enforcement agencies or between members of the same agency, the sum of the information known to the cooperating agencies or officers at the time of an arrest is to be considered in determining whether there was sufficient probable cause therefor." *Woodward v. State*, 668 S.W.2d 337, 344 (Tex.Crim.App.1982) (en banc).

■ The Texas Code of Criminal Procedure sets forth the limited circumstances in which an officer may act without a warrant. TEX.CODE CRIM. PROC. ANN. art. 14 (Vernon Supp.2002). In particular, the statute provides that a peace officer may arrest without a warrant "persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony." TEX. CODE CRIM. PROC. ANN. art. 14.03(a)(1) (Vernon Supp.2002). "Like probable cause, determining whether a place is 'suspicious' is a highly fact specific question." *Parson*, 988 S.W.2d at 268. "Few places are inher-

ently suspicious, but a 'place may become suspicious because of facts and circumstances known to the officer and any reasonable inferences which can be drawn from those facts.'" *Id.*

■ First, with respect to probable cause, the information known to the S.A.P.D. officers at the time of Moss's arrest was as follows: (1) the Golden Wok had been robbed by two black males; (2) Officer Davis had seen Moss and the other suspect walking behind the Golden Wok immediately after the robbery; (3) an Asian employee of the Golden Wok, as well as a group of people at the nearby convenience store, all frantically pointed at Moss and the other suspect when Officer Davis arrived on the scene; (4) Moss and the other suspect fled the scene, running to a nearby apartment complex, after having been pointed out; (5) Moss and the other suspect were found in the apartment complex within two hours of the offense; (6) Officer Davis identified Moss as one of the suspects he had seen behind the Golden Wok. Based on the totality of the circumstances known to the S.A.P.D. officers at the time of Moss's arrest, we believe sufficient probable cause existed to warrant a belief that Moss had committed the offense of aggravated robbery. *See Johnson*, 32 S.W.3d at 298; *Woodward*, 668 S.W.2d at 344. The facts recited above provided the officers with "sufficient trustworthy information" that Moss had committed an offense. *See Johnson*, 32 S.W.3d at 298.

■ Second, we believe that the officers were justified in arresting Moss without a warrant based on the fact that Moss was found in a suspicious place. *See* TEX.CODE CRIM. PROC. ANN. art. 14.03(a)(1) (Vernon Supp.2002). Although an apartment is not a suspicious place in and of itself, it became suspicious because of the facts and circumstances known to the officers at the time of Moss's arrest. *See*

*Parson,* 988 S.W.2d at 268. Moss was found in the same apartment complex to which the two suspects seen by Officer Davis behind the Golden Wok had fled. Officer Davis later positively identified Moss as one of the two suspects. Also, Moss disclaimed any proprietary interest in the apartment where he was found, and it indeed did not belong to him. Given these circumstances, including the facts which supported the probable cause to arrest Moss, the S.A.P.D. officers had the authority to arrest Moss without a warrant pursuant to having been found in a suspicious place. *See* TEX.CODE CRIM. PROC. ANN. art. 14.03(a)(1) (Vernon Supp.2002); *Parson,* 988 S.W.2d at 268.

Because there was probable cause to arrest Moss and his warrantless arrest complied with the Code of Criminal Procedure, Moss's arrest did not violate the Constitution of the United States nor the Constitution of Texas. Accordingly, Moss's first and second points of error are overruled.

## II. Moss's Written Confession

In his third and fourth points of error, Moss argues that the trial court erred in overruling his motion to suppress his written statement to police confessing to the Golden Wok robbery. Moss first contends that the statement was not made voluntarily. In the alternative, he asserts that his statement was made following an illegal arrest, and subsequent circumstances did not attenuate the taint of illegality. After the suppression hearing, the trial court found that Moss's statement was made voluntarily, and thus was lawful and admissible.

■■■■ "At a suppression hearing, the trial court is the sole trier of fact and may choose to believe or disbelieve any or all of a witness's testimony." *In re V.M.D,* 974 S.W.2d 332, 343 (Tex.App.-San Antonio

1998, no pet.). "Our review is limited to whether the trial court properly applied the law to the facts." *Id.* "We should 'afford almost total deference' to a trial court's rulings on application of law to fact questions, as well as determinations of historical facts, if the resolution of those ultimate questions turns on an evaluation of witness credibility and demeanor." *Id.* "Accordingly, the trial court's decision will be upheld absent a clear showing of abuse of discretion." *Id.*

■■■■ "A confession, in order to meet constitutional standards, must be both voluntary and taken in compliance with Miranda." *Ochoa v. State,* 573 S.W.2d 796, 801 (Tex.Crim.App.1978) (en banc). "A statement is not voluntary if there was 'official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker.'" *V.M.D,* 974 S.W.2d at 346. "Voluntariness is decided by considering the totality of the circumstances under which the statement was obtained." *Creager v. State,* 952 S.W.2d 852, 855 (Tex. Crim.App.1997) (en banc). "Once the accused claims that the confession was not voluntary, the burden is upon the State to prove its voluntariness." *Diaz v. State,* 61 S.W.3d 525, 528 (Tex.App.-San Antonio 2001, no pet.).

■■ At the suppression hearing, Moss testified on his own behalf. He stated that Detective Smith cursed at him and made threats regarding his girlfriend, Kachana Alexander. According to Moss, Detective Smith threatened to charge Alexander as a party to the robbery and have her children taken away from her if Moss did not give a statement about the robbery. Detective Smith testified that he never made any such threats, and that he never had any conversation with Moss about the possibili-

ty of Alexander being charged as a party to the robbery.

Looking at the totality of the circumstances, it was within the trial court's discretion to find that Moss's statement was voluntary. *See Creager v. State,* 952 S.W.2d at 855; *V.M.D,* 974 S.W.2d at 343. The trial court's inquiry into voluntariness turned on its evaluation of the witnesses' credibility and demeanor. *See V.M.D,* 974 S.W.2d at 343. As such, it was within the trial court's discretion to believe Detective Smith's testimony and not Moss's. *See id.* The State met its burden of proving that Moss's statement was voluntary. Moss's third point of error is overruled. Because we have already held that Moss's arrest was legal, his fourth point of error is also overruled.

### III. Legality of the Search Warrant

■ In his fifth point of error, Moss argues that the trial court erred in overruling his motion to suppress regarding the search warrant because the warrant was illegally issued. Moss contends that the affidavit in support of the warrant contained a false statement, in the absence of which there was no probable cause to issue the warrant. The trial court concluded that the warrant was lawfully obtained.

■ "A search warrant must be supported by an affidavit setting forth substantial facts establishing probable cause for its issuance." *Robuck v. State,* 40 S.W.3d 650, 653 (Tex.App.-San Antonio 2001, pet. ref'd). "The four corners of the affidavit must be examined in determining whether probable cause exists." *Id.* "Reasonable inferences may be drawn from the affidavit, however, and the affidavit must be interpreted in a common sense and realistic manner." *Id.* at 654. "The magistrate is not required to find proof beyond a reasonable doubt or by a preponderance

of the evidence, but only a probability that contraband or evidence of the crime will be found in a particular place." *Id.*

■ "When a police affiant makes statements in a search warrant affidavit which are intentionally false or made with reckless disregard for the truth, the statements must be excised from the affidavit before determining whether the affidavit affords probable cause for the issuance of the warrant." *Hass v. State,* 790 S.W.2d 609, 611 (Tex.Crim.App.1990) (en banc). "[T]he false statement in the affidavit must have been either intentional or made with reckless disregard for the truth, and must have been necessary to the finding of probable cause, in order to render the warrant invalid." *Dancy v. State,* 728 S.W.2d 772, 782 (Tex.Crim.App.1987) (en banc). "A misstatement in an affidavit that is merely the result of simple negligence or inadvertence, as opposed to reckless disregard for the truth, will not render invalid the warrant based on it." *Id.* at 783.

■ "In conducting a *de novo* review of the trial court's ruling, we do not determine the substantive issue that was before the magistrate *de novo.*" *Robuck,* 40 S.W.3d at 654. "Instead, giving great deference to the magistrate's decision to issue the warrant, we determine whether, considering the totality of the circumstances, the magistrate had a substantial basis for concluding probable cause existed." *Id.*

Moss bases his argument on the following sentence in Detective Morris's affidavit: "On duty San Antonio Police Officer Ronald Davis, badge # 1343, was flagged down by several eye witnesses, including Erwin Kuswanu, and pointed out two black males who were walking away from the Golden Wok restaurant, 8822 Wurzbach, and informed Officer Davis that *the* two males had robbed the restaurant at gunpoint." At the pre-trial hearing, Detective

Morris admitted that the affidavit did contain an incorrect phrase. A correct version of the sentence above would have read that the eye witnesses "informed Officer Davis that two males had robbed the restaurant at gunpoint," thus omitting the word "the" from the phrase. Although Detective Morris admitted that the sentence was phrased incorrectly, he testified that it was not intentional.

Moss has failed to meet his burden that the sentence in question was misstated intentionally or with reckless disregard for the truth. *See Dancy,* 728 S.W.2d at 782. At most, Moss has shown that the misstatement was made as the result of simple negligence or inadvertence. *See id.* at 783. Even if the misstatement was to be excised from the affidavit, the affidavit still contained sufficient facts from which Magistrate Gonzales could have concluded that probable cause existed. *See Hass,* 790 S.W.2d at 611. Interpreting the affidavit in a common sense and realistic manner, it was reasonable for Magistrate Gonzales to determine that there was sufficient probability that evidence of the Golden Wok robbery would be found in the apartment in question. *See Robuck,* 40 S.W.3d at 653–54. Moss's fifth point of error is overruled.

## IV. Texas Rule of Evidence 403

 In his sixth and final point of error, Moss argues that the trial court erred in admitting into evidence various weapons and related items because their probative value was substantially outweighed by the danger of unfair prejudice. The evidence complained of consisted of seven firearms, one holster, one magazine, and numerous boxes of bullets. Moss contends that this amount of weapons and ammunition was greatly out of proportion to the two weapons the suspects used to commit the Golden Wok robbery. He then claims that the

jury could have believed that Moss was being tried for an offense other than aggravated robbery.

 Texas Rule of Evidence 403 provides the following: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX.R. EVID. 403. "All testimony will be prejudicial to one party or the other." *Joiner v. State,* 825 S.W.2d 701, 708 (Tex. Crim.App.1992) (en banc). "It is only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value that Rule 403 is applicable." *Id.* " 'Unfair prejudice' does not, of course, mean that the evidence injures the opponent's case—the central point to offering evidence." *Rogers v. State,* 991 S.W.2d 263, 266 (Tex. Crim.App.1999) (en banc). "Rather it refers to 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.' " *Id.*

 "Whether evidence is admissible is within the sound discretion of the trial judge." *Vega v. State,* 898 S.W.2d 359, 362 (Tex.App.-San Antonio 1995, pet. ref'd). "That determination is reviewed on an abuse of discretion standard." *Id.*

Because Moss was indicted for the offense of aggravated robbery, the State was required to prove that he exhibited a firearm during the commission of the crime. The evidence complained of by Moss constituted circumstantial evidence of that fact. Admitting numerous weapons and ammunition merely showed the jury that Moss had access to various weapons, one of which he could have used to commit the Golden Wok robbery. There is no evidence from the record that the jury be-

lieved it was convicting Moss for anything other than aggravated robbery. *See Rogers*, 991 S.W.2d at 263. The trial court did not abuse its discretion in admitting the evidence. *See Vega*, 898 S.W.2d at 362. Moss's sixth point of error is overruled.

### Conclusion

The judgment of the trial court is affirmed.