MEMORANDUM OPINION




No. 04-03-00326-CR



Michael R. CLAY,


Appellant



v.



The STATE of Texas,


Appellee



From the 175th Judicial District Court, Bexar County, Texas


Trial Court No. 2002CR4755A


Honorable James E. Barlow, Judge Presiding



Opinion by: Phylis J. Speedlin, Justice


Sitting: Alma L. López, Chief Justice

 Sarah B. Duncan, Justice

 Phylis J. Speedlin, Justice


Delivered and Filed: July 21, 2004


AFFIRMED

 Michael R. Clay ("Clay") pled guilty to the offense of murder and was sentenced to thirty
years in prison. The sole issue raised on appeal is whether the trial court erred in denying Clay's
motion to suppress after concluding that Clay's written statement was admissible in evidence. We
affirm the trial court's judgment.

Standard of Review


 We review a trial court's ruling on a motion to suppress under an abuse of discretion
standard. Guzman v. State, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997); Perez v. State, 103
S.W.3d 466, 468 (Tex. App.--San Antonio 2003, no pet.). We view the evidence in the light most
favorable to the trial court's ruling, and we afford almost total deference to the trial court's
determination of historical facts that the record supports, especially when the fact findings are based
on an evaluation of the witnesses' credibility and demeanor. Guzman, 955 S.W.2d at 88-89; Perez,
103 S.W.3d at 468. We review de novo the court's application of the law to the facts. Guzman, 955
S.W.2d at 88-89; Perez, 103 S.W.3d at 468.

Discussion


 Clay contends that the trial court abused its discretion in denying his motion to suppress
because he was not read his Miranda (1) rights and his statement was involuntary. The State responds
that whether Clay was read his Miranda rights and whether his statement was voluntary were
contested factual issues that were resolved adversely to Clay.

 Article 38.21 of the Code of Criminal Procedure provides that an accused's statement "may
be used in evidence against him if it appears that the same was freely and voluntarily made without
compulsion or persuasion." Tex. Code Crim. Proc. Ann. art. 38.21 (Vernon 1979). In order to
meet constitutional standards, a confession must be both voluntary and taken in compliance with
Miranda. Moss v. State, 75 S.W.3d 132, 139 (Tex. App.--San Antonio 2002, pet ref'd). A
confession is not voluntary if it was induced by a promise. Davis v. State, 961 S.W.2d 156, 159
(Tex. Crim. App. 1998). The Texas Court of Criminal Appeals has held that for a promise to render
a confession invalid under Article 38.21, the promise must be "positive, made or sanctioned by
someone in authority, and of such an influential nature that it would cause a defendant to speak
untruthfully." Martinez v. State, 127 S.W.3d 792, 794 (Tex. Crim. App. 2004). In addition, a
statement is not voluntary if there was "official, coercive conduct of such a nature that any statement
obtained thereby was unlikely to have been the product of an essentially free and unconstrained
choice by its maker." Moss, 75 S.W.3d 139 (citation omitted). In evaluating the voluntariness of
a statement, the factfinder must examine the totality of the surrounding circumstances and the entire
course of police conduct with respect to the suspect. Jones v. State, 119 S.W.3d 766, 773 (Tex.
Crim. App. 2003); Moss, 75 S.W.3d at 139. Once the accused claims that the confession was not
voluntary, the burden is upon the State to prove its voluntariness. Moss, 75 S.W.3d at 139.

 Three witnesses testified at the suppression hearing: (1) the detective who arrested Clay and
took the statement; (2) one of the witnesses to the statement; and (3) Clay. The testimony of the
detective and Clay was diametrically different with regard to whether Clay was read his Miranda
rights and with regard to the voluntariness of his statement. 

 Detective John Marshall testified that before he questioned Clay about the murder, he read
Clay his Miranda rights from SAPD Form 66-E, which Clay then signed. When questioning
proceeded, Clay initially denied any knowledge of the shooting. After Detective Marshall told Clay
that he had a significant amount of information that Clay was involved, Clay became emotional and
started to explain the details of the shooting. Clay then agreed to give Detective Marshall a written
statement. After the written statement was prepared, Detective Marshall called two civilian
witnesses into the office, introduced them to Clay, and gave them the opportunity to question Clay
to determine whether his statement was being provided of his own free will. Clay then signed the
statement in the witnesses' presence. Detective Marshall stated that Clay never asked to stop the
interview and never requested an attorney. Detective Marshall testified that neither he nor any other
officer threatened Clay into giving the statement or promised him anything in exchange for the
statement. Finally, Detective Marshall stated that he did not deny Clay any basic necessities, such
as food, water, or access to the bathroom, during the taking of the statement. On cross-examination,
Detective Marshall denied telling Clay that if he failed to cooperate, he could be charged with capital
murder and possibly face a death sentence. Detective Marshall admitted that he told Clay that he had
a significant amount of information and that he knew that Clay was "part of the reason why it
actually happened." Detective Marshall also denied that he slammed a co-defendant's statement on
the desk or put the statement in Clay's face. Detective Marshall stated that he did not tell Clay that
the co-defendant had already told on him.

 Although one of the witnesses to Clay's statement, Warren D. Hubert, Jr., did not recognize
Clay in the courtroom, Hubert stated that he is called to witness statements approximately three to
four times a month, and he does not recall the faces of the people giving the statements. Hubert
explained that when he is called, the written statement has been printed. The detective asks the
person in Hubert's presence if the statement was given of his own free will. One hundred percent
of the time the person responds affirmatively. Hubert never signs a statement as a witness outside
the presence of the person making the statement and never witnesses a statement that has already
been signed by the person before Hubert entered the room. Hubert stated that he witnessed Clay's
statement and recognized his own signature on the statement as a witness.

 Clay testified that he was taken to the interview room and remained in handcuffs during the
interview process. Clay stated that he was never read his Miranda rights, and he did not sign the
SAPD Form 66-E. Clay testified that he was told that if he did not cooperate "it was possible that
[he] would be giving [sic] a death penalty or even a life sentence." Clay stated that he was promised
a lesser punishment if he cooperated. Clay was told that other people in the car had given statements
and was provided one co-defendant's statement to read. Clay further stated that no witnesses were
present when he signed the written statement other than the transporting officer. Clay stated that he
was never given the opportunity to finish reading the written statement before he signed it.

 On cross-examination, Clay stated that he was only aware that he had a right to an attorney
in the courtroom. Clay was not told that he did not have to talk to the detectives or that he could
terminate the interview. Clay was not told that his statement could be used against him at trial. As previously noted, we afford almost total deference to the trial court's determination of
historical facts that the record supports, especially when the fact findings are based on an evaluation
of the witnesses' credibility and demeanor. Guzman, 955 S.W.2d at 88-89; Perez, 103 S.W.3d at
468. In this case, determining whether Clay was informed of his Miranda rights and whether his
statement was voluntary requires an evaluation of the credibility and demeanor of the witnesses.
Because we defer to the trial court's evaluation, we hold that the trial court did not abuse its
discretion in denying the motion to suppress.

Conclusion


 The judgment of the trial court is affirmed.


 Phylis J. Speedlin, Justice


DO NOT PUBLISH
1. Miranda v. Arizona, 384 U.S. 436 (1996).