COURT OF APPEALS

                                                 SECOND DISTRICT
OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-09-095-CR

 

 

RAY REDDING                                                                                  APPELLANT

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

              FROM
THE 297TH DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                                      MEMORANDUM OPINION[1]

                                                              

                                                       ------------

I. Introduction

Appellant
Ray Redding appeals his conviction for aggravated assault on a public servant
with a deadly weapon, a first degree felony. 
In four points, Redding argues that the jury improperly rejected his
affirmative defense of insanity, that the evidence is legally and factually
insufficient to support his conviction, and that the trial court improperly
overruled his rule 403 objection by failing to perform a balancing test openly
or on the record.  We will affirm.








II.  Factual and Procedural Background

Robert
Patrick Riley worked for the City of Fort Worth for over twenty-eight
years.  During his tenure with the city,
Riley became the Director of Development. 
Riley and Redding knew each other because Redding had visited Riley=s
office in the past, complaining of a neighbor Redding believed was trying to
force him to relinquish some property by using microwaves to control his
thoughts.  Riley testified that in the
four or five times Redding had visited his office, Redding had seemed
excitable, but not angry. 

On
the morning of August 10, 2005, Redding left home with a loaded nine-millimeter
semi-automatic handgun and took a bus downtown. 
When he reached the bus transfer downtown, Redding found himself in
front of City Hall, hearing voices in his head telling him to go inside and
shoot.  When Riley arrived at City Hall
that morning to plan for a zoning committee meeting, he saw Redding standing in
front of the elevators in the hallway near Riley=s
office. The two men exchanged pleasantries as Riley passed, and then Redding
blurted out, ASomeone=s
gotta stop this,@ drawing Riley=s
attention in time to turn and see Redding pointing a gun at him.  Redding fired one shot at Riley and missed.
Riley ran around a corner, attempting to take cover behind a desk, but Redding
followed and placed the muzzle of his gun within two feet of Riley=s
head.  Riley tried to defuse the situation, telling Redding to think
about what he was doing and talk to someone about his problems.








Deputy
City Marshal Trevoy Lenear was outside the building when an employee told him
shots had been fired inside.  Deputy
Lenear responded, saw Redding Afumbling@
with a gun, and thought he was trying to clear a malfunction or get a round in
the chamber.  Deputy Lenear drew his
service weapon and commanded Redding to drop the gun and get down on the floor.  Redding complied and was handcuffed and
arrested.

Redding
was indicted for aggravated assault on a public servant with a deadly weapon,
attempted murder, and aggravated assault with a deadly weapon.  In September 2005, he was found incompetent
to stand trial and was placed in various state mental health facilities, where
he remained until he was determined to be competent in January 2008.  Redding was tried before a jury in March
2009.  








At
trial, Redding presented an insanity defense. 
His expert witness, Dr. James Womack, a psychologist, testified that
Redding suffers from paranoid schizophrenia and that, at the time of the
shooting, he did not know right from wrong. 
The State=s expert, Dr. J. Randall
Price, also a psychologist, testified that, although Redding suffers from a
severe mental disease or defect that Dr. Price diagnosed as Apsychosis
not otherwise specified@ and delusions, Redding knew
at the time of the shooting what he was doing was wrong.  Redding presented testimony from family
members describing his delusions, auditory command hallucinations, and claims
of having a government microchip in the roof of his mouth that manipulated his
thoughts and bodily functions via two-way microwave transmissions. Redding=s
maternal aunt, Nancy Thomas, testified that Redding had shown her documents he
had printed from the Internet relating to the Achip
being implanted in his head.@  Thomas also testified that Redding had talked
to and argued with voices in his head, telling them to Ajust
leave me alone.@  Redding=s
brother, Arthur Wayne Redding, Jr. testified that Redding would call the
automated time-and-temperature telephone number every hour on the hour and Agive
some kind of report@ and that Redding had
believed a chip had been implanted in him after his jaw was broken and wired
shut some years before.  Wayne Redding
also testified to Redding=s interaction with the
voices in his head.  

The
jury rejected Redding=s insanity defense,
convicted him of aggravated assault on a public servant with a deadly weapon,
and assessed his punishment at sixty years=
confinement in the institutional division of the Texas Department of Criminal
Justice.  The trial court sentenced him
accordingly.  This appeal followed.

III. Sufficiency of
the Evidence








In
his first, second, and third points, Redding challenges the jury=s
rejection of his insanity defense and the legal and factual sufficiency of the
evidence supporting his conviction.  In
his first point, he alleges that he proved by a preponderance of the evidence
that he was insane at the time of the shooting and that, at the time of the
offense and as the result of his mental illness, he did not know that his
conduct was wrong.  In his second point,
Redding challenges the legal sufficiency of the evidence to prove the elements
of aggravated assault on a public servant with a deadly weapon.  In his third point, Redding argues that the
evidence supporting the jury=s
rejection of his insanity defense was factually insufficient and also
challenges the factual sufficiency of the evidence as to the mens rea
element of the crime itself.  We will
address each of these arguments in turn.

A. 
Legal and Factual Sufficiency

1. 
Standards of Review

In
reviewing the legal sufficiency of the evidence to support a conviction, we
view all of the evidence in the light most favorable to the prosecution in
order to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).








This
standard gives full play to the responsibility of the trier of fact to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts. 
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235
S.W.3d at 778.  The trier of fact is the
sole judge of the weight and credibility of the evidence.  See Tex. Code Crim. Proc. Ann. art.
38.04 (Vernon 1979); Brown v. State, 270 S.W.3d 564, 568 (Tex. Crim.
App. 2008), cert. denied, 129 S. Ct. 2075 (2009).  Thus, when performing a legal sufficiency
review, we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the factfinder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@  Hooper v. State, 214 S.W.3d 9, 16B17
(Tex. Crim. App. 2007).  We must presume
that the factfinder resolved any conflicting inferences in favor of the
prosecution and defer to that resolution. 
Jackson, 443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235
S.W.3d at 778.

When
reviewing the factual sufficiency of the evidence to support a conviction, we
view all the evidence in a neutral light, favoring neither party.  Steadman v. State, 280 S.W.3d 242, 246
(Tex. Crim. App. 2009); Watson, 204 S.W.3d at 414.  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
factfinder=s
determination is clearly wrong and manifestly unjust or whether conflicting evidence
so greatly outweighs the evidence supporting the conviction that the factfinder=s
determination is manifestly unjust.  Steadman,
280 S.W.3d at 246; Watson, 204 S.W.3d at 414B15,
417.  To reverse under the second ground,
we must determine, with some objective basis in the record, that the great
weight and preponderance of all the evidence, although legally sufficient,
contradicts the verdict.  Watson,
204 S.W.3d at 417.








Unless
we conclude that it is necessary to correct manifest injustice, we must give
due deference to the factfinder=s
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@  Johnson v. State, 23 S.W.3d 1, 9 (Tex.
Crim. App. 2000); see Steadman, 280 S.W.3d at 246.  Evidence is always factually sufficient when
it preponderates in favor of the conviction. 
Steadman, 280 S.W.3d at 247; see Watson, 204 S.W.3d at
417.

                         2. Law on Aggravated
Assault on a Public Servant

A
person commits the offense of aggravated assault on a public servant with a
deadly weapon if he (1) intentionally or knowingly (2) threatens a person (3)
that the actor knows to be a public servant (4) with imminent bodily injury (5)
while the public servant is lawfully discharging an official duty and (6)
employs a deadly weapon in the assault.  See
Tex. Penal Code Ann. '' 22.01(a)(2),
22.02(a)(2), 22.02(b)(2)(B) (Vernon Supp. 2009).

The
offense of assault on a public servant does not require that the public servant
be assaulted because of his status, merely that his status be known to
the defendant and that the public servant be assaulted while lawfully
discharging his official duty.  See
id. ' 22.02(b)(2)(B).

                       3.  Legally Sufficient Evidence to Support
Conviction

In
his second point, Redding argues that the evidence was legally insufficient to
prove the elements of aggravated assault on a public servant with a deadly
weapon.  Specifically, Redding argues
that the State failed to carry its burden to prove beyond a reasonable doubt
that he committed the crime.








The
evidence demonstrated that Redding aimed a gun at Riley near the elevators in
City Hall and fired a shot.  Kari
Burgett, a human resources employee, testified that she heard a gunshot and saw
Redding, gun in hand, chasing Riley. 
Riley was a public servant in lawful discharge of his duties as the
Director of Development for the City of Fort Worth; he was at work preparing
for a zoning committee meeting.  Redding
knew Riley was a public servant; the two men had spoken on multiple previous
occasions about matters related to city affairs.

When
Redding drew his gun and fired in Riley=s
direction, he placed Riley within a zone of danger where imminent injury was
not only possible, but likely, especially considering that Redding chased Riley
down and pointed the gun at his head. 
Finally, Redding used a nine-millimeter handgun in the assault, a
firearm, which is by definition a deadly weapon.  See id. ' 1.07(a)(17)(A)
(Vernon Supp. 2009).

Viewing
the evidence in the light most favorable to the verdict, we conclude that a
rational trier of fact could have found beyond a reasonable doubt that Redding
committed aggravated assault on Riley, a public servant, with a deadly
weapon.  See Jackson, 443 U.S. at
326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.  Accordingly, we overrule his second point.

4. 
Factually Sufficient Evidence to Support Conviction








Redding
argues in a portion of his third point that the evidence was factually
insufficient to show that he possessed the requisite mens rea to commit
aggravated assault on a public servant with a deadly weapon because Redding did
not shoot at Riley because of his status as a public servant.[2]  Rather, according to Redding, he shot at
Riley Ato >stop= the
voices from telling [him] what to do.@

The
State had to prove beyond a reasonable doubt that Redding committed aggravated
assault on a personCRileyCwhom
Redding knew to be a public servant while Riley was engaged in the lawful
discharge of his official duties.  For a
defendant=s
delusional state to affect the mens rea element of the offense, as
Redding contends, the defendant would have to believe that his target is
something other than a public servant.  See
Ruffin v. State, 270 S.W.3d 586, 593B94
(Tex. Crim. App. 2008) (noting that the law presumes that criminal defendants
are sane and intend the natural consequences of their acts).  Instead, Redding presented a delusional
motive for firing at an individual whom Redding knew was a public servant.  Nowhere in the record do we find evidence
that Redding believed Riley was anything other than the Director of Development
for the City of Fort Worth. 
Consequently, we hold that factually sufficient evidence existed that
Redding possessed the required mens rea, and we overrule this portion of
his third point.

                                    B.
Affirmative Defense of Insanity








In
Redding=s
first point and in the remainder of his third point, he argues that the
evidence is legally and factually insufficient to support the jury=s
implicit finding rejecting his insanity defense.  Redding alleges that he proved by a
preponderance of the evidence that he was insane at the time of the shooting
and he did not know that his conduct was wrong at the time of the offense and
as the result of his mental illness.

1. 
Standards of Review

Section
8.01(a) of the penal code provides that A[i]t
is an affirmative defense to prosecution that, at the time of the conduct
charged, the actor, as a result of severe mental disease or defect, did not
know that his conduct was wrong.@  Tex. Penal Code Ann. ' 8.01
(Vernon 2003).  The defendant has the burden
of proving an affirmative defense by a preponderance of the evidence. Id.
'
2.04(d).

When
reviewing the legal sufficiency of the factfinder=s
implicit rejection of an affirmative defense, we must first examine the record
for evidence supporting the jury=s
implicit finding rejecting the affirmative defense, ignoring all evidence to
the contrary.  See Cleveland v. State,
177 S.W.3d 374, 387 (Tex. App.CHouston
[1st Dist.], pet. ref=d) (en banc), cert.
denied, 547 U.S. 1073 (2006); Howard v. State, 145 S.W.3d 327, 333B35
(Tex. App.CFort
Worth 2004, no pet.).  If there is no
evidence to support the finding, then we must examine the entire record to see
if the appellant proved the affirmative defense as a matter of law.  Cleveland, 177 S.W.3d at 387; Howard,
145 S.W.3d at 333B35.








When
reviewing the factual sufficiency of the factfinder=s
implicit rejection of an affirmative defense, we must consider all the evidence
relevant to the affirmative defense and determine whether the judgment is so
against the great weight and preponderance of the evidence as to be manifestly
unjust.  Meraz v. State, 785
S.W.2d 146, 155 (Tex. Crim. App. 1990). 
In our review, we may not usurp the function of the trier of fact by
substituting our judgment in the place of its verdict.  See id. at 154.  We cannot conclude that a conviction is
clearly wrong or manifestly unjust simply because we would have voted to acquit
as jurors.  Watson v. State, 204
S.W.3d 404, 417 (Tex. Crim. App. 2006). 
We may sustain this point only if, after detailing the relevant evidence
and stating in what regard the contrary evidence greatly outweighs the evidence
supporting the verdict, we also clearly state why the verdict is so against the
great weight of the evidence as to be manifestly unjust, why it shocks the
conscience, or why it clearly demonstrates bias.  Meraz, 785 S.W.2d  at 154 n.2; see Clewis v. State, 922
S.W.2d 126, 135B36 (Tex. Crim. App. 1996).

                                          2.
Insanity: Applicable Law

The
test for determining insanity is whether, at the time of the conduct charged,
as a result of mental disease or defect, the defendant did not know his conduct
was wrong.  Ruffin, 270 S.W.3d at
592.  In this context, Awrong@
means Aillegal.@  Id.; Bigby v. State, 892 S.W.2d
864, 878 (Tex. Crim. App. 1994), cert. denied, 515 U.S. 1162
(1995).  Although jurors may not
arbitrarily disregard expert testimony as to insanity, neither may they give
conclusive effect to such testimony.  Graham
v. State, 566 S.W.2d 941, 951 (Tex. Crim. App. 1978).  The circumstances of the crime itself are
also important in determining the mental state of the accused at the time of
the commission of the offense.  Id.
at 951.








         3. Legally Sufficient
Evidence Supporting Rejection of Insanity Defense

We
have reviewed the evidence supporting the jury=s
implicit finding that Redding knew, at the time of the shooting, that what he
was doing was wrong. See Howard, 145 S.W.3d at 334.  Dr. Price testified for the State that
Redding did, in fact, hear voices telling him to enter the building and shoot
so that he could get his story heard in a court of law.[3]  However, Dr. Price also noted that Redding
had told him in their interview that he was arguing with the voices, telling
them that he did not want to shoot up City Hall because doing so would result
in him being sent to prison.

While
it was undisputed that Redding had a mental disease or defect, his realization
that he would go to jail if he shot a gun in City Hall sufficiently supports
the jury=s
finding that he had known, when he shot at Riley, that what he was doing was
wrong.  In other words, a rational jury
having heard this testimony could have chosen to believe it and found Redding
sane at the time of the shooting because his realization that he would go to
jail showed that he knew his act was illegal and therefore Awrong.@  See Cleveland, 177 S.W.3d at 387; Ruffin,
270 S.W.3d at 592.  We hold that the
evidence is legally sufficient to support the jury=s
implicit finding rejecting Redding=s
affirmative defense of insanity.

        4. Factually
Sufficient Evidence Supporting Rejection of Insanity Defense








Having
held the evidence legally sufficient to support the jury=s
rejection of Redding=s insanity defense, we now
address the factual sufficiency of the evidence to support the jury=s
rejection of the defense. 








It
is undisputed that Redding had a severe mental disease or defect at the time of
the shooting.  The issue here is whether,
as a result of that disease or defect, Redding had known that shooting a gun at
Riley was wrong.  Redding=s
expert, Dr. Womack, who interviewed Redding, reviewed his available data, and
performed a social history on him, testified that Redding suffers from paranoid
schizophrenia and did not know right from wrong when he shot at Riley.  Dr. Womack based these conclusions on Redding=s
failure to attempt to avoid detection, to express remorse, and to dispose of
evidence.  Dr. Womack testified that he
did not find dispositive that Redding had known that he would be Adetained@ if
he used the gun inside City Hall. 
Rather, he focused on the moral correctness of the act as seen by
Redding due to his mental disease. 
However, whether Redding believed the act of firing a gun at someone in
City Hall was morally right is immaterial; instead, the question is, ADoes
the defendant factually know that society considers this conduct against the
law, even though the defendant, due to his mental disease or defect, may think
that the conduct is morally justified?@  Ruffin, 270 S.W.3d at 592.  Redding=s
argument with the voices in his head strongly indicates his knowledge that
discharging a weapon at another human being is something society considers
against the law.  See id.  In fact, Redding=s
motive for the shooting is dispositive. 
He went to City Hall with a gun in order to fire that gun inside, in the
hope that he would be caught, brought to trial, and get a chance to air his
grievances in open court.  Such an
expectation clearly indicates knowledge of the wrongfulness of the act.

After
our review of all the evidence relevant to the issue of insanity, we have
determined that the jury=s verdict is not so against
the great weight and preponderance of the evidence as to be manifestly
unjust.  See Meraz, 785 S.W.2d at
155.  Given both the gravamen and volume
of testimony in favor of the jury=s
implied finding, we hold that the jury=s
rejection of Redding=s insanity defense was
grounded on factually sufficient evidence. 


Having
held that the evidence was legally and factually sufficient to support the jury=s
implied finding rejecting his affirmative defense of insanity, we overrule
Redding=s
first point and the remainder of his third point.

IV. Admission of Evidence was not Abuse of
Discretion

In
his fourth point, Redding argues that the trial court abused its discretion
when it overruled his rule 403 objection to the admission of the gun, magazine,
and ammunition used in his assault on Riley. 









Texas
Rule of Evidence 403 provides, AAlthough
relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue delay, or needless
presentation of cumulative evidence.@  Tex. R. Evid. 403.  Once a defendant makes a rule 403 objection,
the trial court must weigh the probative value of the evidence to determine if
it is substantially outweighed by its potential for unfair prejudice.  Santellan v. State, 939 S.W.2d 155, 169
(Tex. Crim. App. 1997).

We
reverse a trial court=s decision to admit evidence
rarely and only after a clear abuse of discretion.  Mozon v. State, 991 S.W.2d 841, 847
(Tex. Crim. App. 1999); Vega v. State, 898 S.W.2d 359, 362 (Tex. App.CSan
Antonio 1995, pet. ref=d).  Factors considered in our analysis of an
issue regarding rule 403 include (1) the probative value of the evidence, (2)
the potential to impress the jury in some irrational, yet indelible, way, (3)
the time needed to develop the evidence, and (4) the proponent=s
need for the evidence.  See Erazo v.
State, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004).      

Here,
because Redding was indicted for the offense of aggravated assault on a public
servant with a deadly weapon, the State was required to prove that he exhibited
a deadly weaponChere, a gunCduring
the commission of the assault.  The gun,
magazine, and bullets complained of by Redding constituted direct evidence of
that element of the offense.  See Moss
v. State, 75 S.W.3d 132, 141 (Tex. App.CSan
Antonio 2002, pet. ref=d) (holding admission of
firearms, holster, magazine, and bullets in aggravated robbery case was not
violative of rule 403 because evidence constituted circumstantial evidence that
defendant exhibited firearm during robbery). 
The probative value of the evidence was thus considerable, and the
evidence was necessary to the State=s
case.  See Erazo, 144 S.W.3d at
489.  








Weighing
the probative value of the evidence with the other rule 403 factors, the trial
court could have reasonably concluded that the evidence did not have a tendency
to impress the jury in some irrational, yet indelible, way, and the time needed
to introduce the evidence was minimal, consisting of less than five pages of
the record.  See Santellan, 939
S.W.2d at 169. Consequently, the trial court could have reasonably concluded
that the probative value of the evidence was not substantially outweighed by
the danger of unfair prejudice.  See
Tex. R. Evid. 403.

We
hold that the trial court did not abuse its discretion by admitting the gun, magazine,
and ammunition over Redding=s
rule 403 objection, and we overrule Redding=s
fourth point.[4]  See id.; Santellan, 939, S.W.2d
at 169.

V. Conclusion

Having
overruled Redding=s four points, we affirm the
trial court=s
judgment.

 

 

SUE WALKER

JUSTICE

 

PANEL:
WALKER and MCCOY, JJ.; and DIXON W. HOLMAN, J. (Senior Justice, Retired, Sitting
by Assignment).

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: May 27, 2010











[1]See Tex. R. App. P. 47.4.





[2]We will address the
remainder of Redding=s argument in his
third pointCregarding the
sufficiency of the evidence to support the jury=s implicit finding rejecting his insanity defenseCseparately below.   





[3]Notably, Dr. Womack
also testified that Redding=s motive for the
shooting was to be arrested.  Redding
told him in interviews, AI=d be arrested, but
when I told them what was happening, I would get to go home.  They would uncover the conspiracy and find
the equipment [microchip] and have it turned off.@ 





[4]In his fourth point,
Redding also appears to argue that the State failed to establish chain of
custody for the exhibits discussed above. 
However, his only objection at trial was under rule 403.  Thus, Redding did not preserve the issue for
appeal.  See Tex. R. App. P. 33.1.