

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00197-CR

The **STATE** of Texas,
Appellant

v.

Robert **ROMO**,
Appellee

From the County Court at Law No. 15, Bexar County, Texas
Trial Court No. 414481
The Honorable Michael La Hood, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:    Karen Angelini, Justice
    Marialyn Barnard, Justice
    Rebeca C. Martinez, Justice

Delivered and Filed:  June 17, 2015

AFFIRMED

This is an appeal from the trial court's granting of Robert Romo's motion to suppress.  In a single issue on appeal, the State asserts the trial court erred in concluding the State lacked probable cause to arrest Romo for driving while intoxicated.  We affirm.

## FACTS

On January 11, 2013, at approximately 1:21 a.m., Officer Zachary Waters was in his marked patrol car, which did not have video camera, when he observed a Toyota Tundra truck traveling behind another car in the far right lane on the entrance ramp to Northwest Loop 410.

Officer Waters saw the truck move onto the shoulder by crossing over a solid white line, pass the car in front, and then exit the freeway. According to Officer Waters, driving on an improved shoulder in this fashion is a violation of the Texas Transportation Code. At this point, Officer Waters also exited the freeway, and activated his traffic lights and siren.

Officer Waters stated the driver of the truck did not immediately stop, but instead passed two or three parking lots, and finally stopped in either the third or fourth lot. The truck did not pull into a parking space, but stopped in the middle of the lot with the truck's motor running. Waters stopped his patrol car about a car's length behind the truck, got out of his car, and approached the driver's side of the truck. Officer Waters could not hear any sound from within the truck and, because of the dark tint on the windows, he could not see inside the truck. Standing near the driver's side of the truck, Waters ordered the occupant(s) to roll down the window and show their hands. When he received no response, Waters knocked on the passenger side window "giving more verbal command [sic]." Again, he received no response. As he was reaching up to knock on the window a second time, the driver's window began to roll down, at which time Waters saw that no one was sitting in the driver's seat and the front seat passenger was reaching over the center console rolling down the window. Officer Waters said he was surprised to see no driver because he had not seen anyone exit the truck "[a]nd the vehicle does not drive itself." Waters said that in the less than one minute that elapsed between his first command to open the window and his starting to tap on the window the second time, there was enough time for one individual to move from one seat to another seat inside the truck. He also believed that in the time between when the truck stopped and the window rolled down, there was not enough time for two people to switch seats.

Officer Waters testified that when the driver's side window rolled down, he smelled the strong odor of alcohol coming from inside the truck. Waters asked the front seat passenger who

was driving the truck, and the passenger—later identified as Raymond Ochoa—said he was not driving and "he was helping out one of his buddies that was SAPD."[1]  Waters then looked further inside the truck and saw Romo sitting in the back passenger seat behind Ochoa.  Officer Waters later discovered Romo was the registered owner of the truck.

Before asking either of the men to exit the truck, Waters again asked who had been driving the truck, and neither man responded.  Waters said both men had glassy, bloodshot eyes, and Romo "seemed to be in an emotional state," "he had some somber about him."  Waters first asked Ochoa to exit the truck.  Ochoa turned off the truck's motor, left the keys in the ignition, and got out to meet Waters at the back of the truck, near the patrol car.  Ochoa again said he had not been driving the truck, but was "helping out his buddy who was SAPD."  Waters stated he smelled alcohol on Ochoa's breath.  Officer Waters then returned to the driver's side of the truck, opened the back door, and asked whether Romo was a San Antonio police officer.  Romo confirmed that he was.  Officer Waters asked Romo to get out of the truck, which he was able to do on his own by opening the passenger door closest to Romo, and walking around the front of the truck to where Waters stood on the driver's side.  Waters said he did not ask Romo to exit the truck by coming through the passenger side behind the driver.  As Romo walked toward Waters, Waters observed Romo had a "small sway side to side, not necessarily able to walk a straight line."  However, Waters admitted he did not know if that was Romo's normal way to walk.  Waters said Romo did not stand in one spot, but continuously moved, with "a little stagger about him."  Officer Waters also smelled alcohol on Romo's breath.  Waters said Romo's speech "was good."  Waters said Romo asked him to call a supervisor to the scene, and Waters called his lieutenant, Hector Lopez.  While on the telephone call with his lieutenant, Officer Waters asked Romo to take the standardized field

---

[1] Ochoa did not testify at the suppression hearing.

sobriety tests, but Romo refused. Waters said he did not immediately arrest Romo because department policy required him to first notify his supervisor when a police office is involved in an incident.

While they waited for the lieutenant to arrive, Romo sat down on the sidewalk. Waters said Romo asked to use the bathroom and, at one point, had tears in his eyes. Although Romo told Officer Waters he had not been driving, Waters stated he believed Romo was the driver and that he was intoxicated. Romo also told Officer Waters that Ochoa had recently been arrested for driving while intoxicated. Officer Waters explained, as follows, why he believed Romo was the driver: "I believe from the time we pulled in the Good Will parking lot. There was only one — enough time for one person to move. I believe a reasonable person, if they're going to jump seats from the first row to [the] second row, they will go diagonally because that is the fastest and easiest way to do it." Romo had been sitting diagonally across from the driver's seat in the back passenger row. However, Officer Waters admitted it was possible the driver could have asked the front seat passenger to move to the back so that the driver could then move to the front passenger seat. Although Romo did not seem confused when talking to Officer Waters and his speech was not slurred, Waters believed Romo was intoxicated based on the moving traffic violation; his glassy, bloodshot eyes; the odor of intoxicant; Waters' belief that Romo moved from the driver's seat to the back seat; the way Romo walked when he walked around his truck; the fact that Romo "took a longer route around his truck"; the fact that Romo asked to use the bathroom when there was no public restroom available; and the fact that the driver of the truck by-passed the first two or three empty parking lots before pulling over.

Lieutenant Lopez testified it took him approximately ten to fifteen minutes to arrive at the scene after he was called by Officer Waters. He said that when he arrived, Romo was positioned fifty to sixty feet away from the truck and Ochoa was sitting in the front passenger seat inside the

truck. Lieutenant Lopez could not remember whether Romo admitted the truck was his, but he did remember Romo denied driving the truck. Lopez described Romo as having a strong smell of intoxicants on his breath, being somewhat unsteady on his feet, swaying a little while standing, having slurred speech, and crying because he and his girlfriend had broken up. However, he also stated Romo was coherent and able to have a conversation. After speaking with Romo, Lieutenant Lopez walked back to the truck to speak with Ochoa, who said "I'm just here for a ride. I needed to get someplace. My friend offered me a ride." Lieutenant Lopez said Ochoa did not directly deny driving, but he was vague and evasive about who had been driving the truck. While speaking with Ochoa, Lieutenant Lopez noticed a wallet on the floor between the driver's seat and the driver's door, an empty cell phone cover on the driver's seat, and a beanie cap on the center console. Lopez said the three items all belonged to Romo, but he did not know whether the wallet on the floor was empty; the contents, if any, of another wallet that Romo had on him; or whether the cell phone that Romo had on him also had a case. Lieutenant Lopez also saw a scuff mark on the front center console, which he believed to be a shoe print, "going from the driver's seat to the back right passenger seat." Lopez said it lead directly to the area where Romo was found to be sitting by Officer Waters, but he admitted no testing was done on the scuff mark to confirm it was a shoe print. Lieutenant Lopez believed Romo caused the scuff mark because, in his opinion, the route from the driver's seat to the back seat was the easiest route.

At some point in time, Lieutenant Lopez's supervisor, Captain Gary Smith, arrived on the scene. Captain Smith spoke first to Ochoa, who said he was not driving the truck. Captain Smith testified that Romo told him Ochoa had been the driver, and he (Romo) had been sitting in the front passenger seat, but he moved to the back passenger seat when they were stopped. During this conversation, Captain Smith believed Romo was intoxicated because he was unsteady on his feet, he had slurred speech and bloodshot eyes, and he smelled of alcohol. Smith testified he

believed Romo was the driver and Romo had moved from the driver's seat to the back passenger seat. Captain Smith stated that when he told Romo his story did not make sense, Romo "got that look on his face that he had been caught in a lie." Captain Smith testified the driver's side of the center console had a scuff mark, but the passenger side of the console did not have a scuff mark or any other mark to indicate someone moved from the front passenger seat to the back passenger seat.

Romo was arrested for driving while intoxicated. Following the suppression hearing, the trial court granted Romo's motion to suppress and issued findings of fact and conclusions of law, including that Romo was seized without probable cause that he engaged in any criminal activity.

### STANDARD OF REVIEW

In reviewing the trial court's ruling on a motion to suppress, we afford almost total deference to the court's determination of historical facts, especially when it is based on assessment of a witness's credibility, as long as the fact findings are supported by the record. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We apply the same deferential standard when reviewing the court's ruling on "application of law to fact questions" or "mixed questions of law and fact" if resolution of those issues turns on an evaluation of credibility, but review de novo the court's application of the law to the facts, and resolution of mixed questions of law and fact, that do not depend upon credibility assessments. *Amador*, 221 S.W.3d at 673. When, as here, the trial court makes express findings of fact, we view the evidence in the light most favorable to the court's ruling and determine whether the evidence supports the fact findings. *Valtierra*, 310 S.W.3d at 447.

**ANALYSIS**

Romo challenged his warrantless arrest on constitutional grounds and under Texas Code of Criminal Procedure Chapter 14, arguing his arrest was made without probable cause. An officer may make a warrantless arrest when (1) there is probable cause to believe an offense has been or is being committed, and (2) the arrest falls within one of the statutory exceptions to the warrant requirement contained in articles 14.01 through 14.04 of the Texas Code of Criminal Procedure. *State v. Steelman*, 93 S.W.3d 102, 106, n.5 (Tex. Crim. App. 2002); TEX. CODE CRIM. PROC. ANN. art. 14.01(b) (West 2015) ("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."). Probable cause for a warrantless arrest exists when "at the moment of arrest, the facts and circumstances within the officer's knowledge and of which the officer had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the arrested person had committed or was committing an offense." *Guzman*, 955 S.W.2d at 90.

"Probable cause deals with probabilities; it requires more than mere suspicion but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence." *Id.* at 87; *State v. Parson*, 988 S.W.2d 264, 267 (Tex. App.—San Antonio 1998, no pet.). As the reviewing court, we consider the totality of the circumstances when determining whether the facts were sufficient to give the officer probable cause to arrest the defendant. *See Guzman*, 955 S.W.2d at 87.

The offense of driving while intoxicated occurs when an individual (1) is intoxicated and (2) operates a motor vehicle in a public place. *See* TEX. PEN. CODE ANN. § 49.04(a) (West Supp. 2015). Texas courts have found probable cause despite the fact that an officer did not see the accused operating a motor vehicle. *See, e.g., Parson*, 988 S.W.2d at 267-68 (finding probable cause (1) where accused (a) was connected to the accident scene, (b) was standing in front yard

only five to ten minutes from the scene, (c) had damage on a truck adjacent to him, (d) had told a friend that he had hit something on the way home, (e) seemed intoxicated, (f) became upset when officers told him people had been injured in a hit and run accident nearby and (2) where the vehicle involved in the accident was a truck); *Elliott v. State*, 908 S.W.2d 590, 591-92 (Tex. App.—Austin 1995, pet. ref'd) (finding probable cause where appellant was involved in accident and was intoxicated).

When members of the same law enforcement agency have been cooperating in the investigation, we consider the sum of the information known to the cooperating officers at the time of the arrest in determining whether there was sufficient probable cause. *Moss v. State*, 75 S.W.3d 132, 138 (Tex. App.—San Antonio 2002, pet. ref'd); *see also Woodward v. State*, 668 S.W.2d 337, 344 (Tex. Crim. App. 1982). Here, the facts known to the officers who investigated the scene at the time of Romo's arrest were: (1) no one was sitting in the driver's seat when Officer Waters made first contact with the occupants of the truck; (2) Romo appeared intoxicated based on (a) his bloodshot eyes, (b) his slurred speech, (c) he smelled of alcohol, and (d) he swayed when he stood and staggered when he walked; (3) Ochoa also had glassy, bloodshot eyes and his breath smelled of alcohol; (4) Romo was sitting in the rear passenger seat of the truck, which was registered to him; (5) certain items belonging to Romo were found near the front driver's seat; (6) a scuff mark appeared on the driver's side of the center console; (7) both Ochoa and Romo denied driving the truck; (8) each man either insinuated or stated the other was driving the truck; and (9) both men had a reason to lie about who was driving, Ochoa because he allegedly had a prior DWI arrest and Romo because he was a San Antonio police officer facing a DWI charge.

A trial court abuses its discretion if no reasonable view of the record could support the trial court's ruling. *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012) (reviewing motion for new trial for ineffective assistance of counsel). However, when there are two permissible views

of the evidence, the trial court's choice between them cannot be clearly erroneous. *Id.* Finally, we may not substitute our own judgment for that of the trial court and must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.* In this case, even if we believed that, under the totality of the circumstances, the investigating officers had probable cause to believe Romo was intoxicated,[2] we cannot conclude the trial court abused its discretion in determining the officers lacked probable cause to believe Romo was driving the truck when it was stopped for a traffic violation.[3] Therefore, we must affirm the trial court's order granting the motion to suppress.

Rebeca C. Martinez, Justice

Do not publish

---

[2] For this reason, we do not address the State's challenge to the trial court's findings regarding Romo's alleged intoxication.

[3] On appeal, the State contends that because "three officers testified consistently," "the only way to uphold the trial court's ruling is to find the trial court did not believe the officer's testimony." However, according to the State, the trial court did not make any explicit credibility findings; therefore, this court should remand for specific findings from the trial court "on which specific parts of the three officers' testimony [that Romo was intoxicated] the trial court found not true." First, it does not appear from the record that the State asked the trial court for additional findings of fact. Second, because we conclude the trial court did not abuse its discretion in finding "[t]hrough the credibility of the testimony and evidence presented, the State failed to credibly establish that there was probable cause that Romo was the driver of the vehicle on the night of January 11, 2013," remand for additional credibility findings on whether Romo was intoxicated would not aid in our disposition of this appeal.