Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



## OPINION

No. 04-09-00350-CR
04-09-00351-CR
04-09-00352-CR

Erin **McCUTCHEN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No 1, Bexar County, Texas
Trial Court Nos. 228384, 228385, 233253
Honorable Gladys M. Oakley, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:     Karen Angelini, Justice
             Phylis J. Speedlin, Justice
             Rebecca Simmons, Justice

Delivered and Filed:  September 22, 2010

AFFIRMED

A jury convicted appellant Erin McCutchen of the offenses of criminal mischief, attempted escape, and resisting arrest. McCutchen was sentenced to thirty days in jail for each offense; however, these sentences were suspended, and McCutchen was placed on probation for six months. McCutchen appealed. In eight issues, McCutchen argues her convictions should be reversed because the trial court erred (1) in overruling a motion to suppress her arrest; (2) in

allowing the State to refuse to consent to her jury trial waiver; (3) in permitting an officer to testify about driver reaction time; (4) in allowing McCutchen's emergency room physician to testify about her toxicology report; and (5) in denying a jury instruction pursuant to article 38.23 of the Texas Code of Criminal Procedure. Additionally, McCutchen argues her convictions must be reversed because her due process rights were violated by the officers' conduct shortly after her arrest. We affirm the judgments of conviction.

## THE TRIAL EVIDENCE

At trial, the evidence showed the following. Shortly before midnight on September 5, 2007, eighteen-year-old McCutchen was at Cowboys Dance Hall in San Antonio, Texas. Security guards carried McCutchen outside. Fearing that McCutchen was suffering from alcohol poisoning, the dance hall staff called 9-1-1; reported there was a young woman at the dance hall who was not conscious, had a weak pulse, and appeared to have alcohol poisoning; and requested emergency medical services (EMS).

A San Antonio police officer, George Olivarri, was also dispatched to the dance hall. Olivarri spoke to the paramedics who informed him that McCutchen was intoxicated, but not to the point where she needed transportation to the hospital. Officer Olivarri noticed McCutchen had the strong odor of intoxicants on her breath and had bloodshot eyes. Officer Olivarri learned of McCutchen's age and identity by reviewing her driver's license. At first, Officer Olivarri decided not to arrest McCutchen, provided that a responsible, sober adult came to pick her up. McCutchen's brother, who was also at the dance hall, called their mother who agreed to come pick up McCutchen and take her home.

Because McCutchen was very unsteady on her feet, Officer Olivarri had her sit down on the curb in the parking lot while waiting to be picked up. Initially, McCutchen complied.

However, after having a verbal confrontation with her brother, she stood up and started running around the parking lot. Cars were driving around in the parking lot, making McCutchen's conduct dangerous. Officer Olivarri and another officer went after her, apprehended her, and brought her back to the curb. McCutchen then asked to go to the restroom, and a security guard took her to the restroom in a golf cart. However, when McCutchen returned, she had another verbal confrontation with her brother, and again took off running around the parking lot. Again, Officer Olivarri went after McCutchen and apprehended her. At this point, Officer Olivarri changed his mind about arresting McCutchen because he was concerned that she would get hit by a car. Officer Olivarri decided to arrest McCutchen for public intoxication.

Officer Olivarri told McCutchen she was under arrest and started to handcuff her. When he put the first handcuff on, McCutchen started whimpering and fell forward. The momentum of McCutchen falling forward caused Officer Olivarri to lean over her momentarily. With the help of another officer, Officer Olivarri finished handcuffing McCutchen. They then walked McCutchen over to Officer Olivarri's patrol car. McCutchen was placed on the right side of the backseat, but her seatbelt was not fastened. Officer Olivarri explained that he did not fasten McCutchen's seatbelt because he did not want to make himself susceptible to a head-butt or a bite or even an allegation that he had touched her inappropriately. Officer Olivarri then proceeded to drive McCutchen to the magistrate's office in downtown San Antonio.

While Officer Olivarri was driving on Interstate Highway 35, McCutchen exhibited a range of emotions and behaviors. At first, she was whimpering and crying, but seemed to accept the fact that she was going to jail. Then McCutchen's behavior changed, and she started screaming and yelling. She would yell for awhile, then she would calm down, and then she would resume yelling. As Officer Olivarri was approaching downtown, near the Interstate

Highway 37 interchange, McCutchen starting banging her head on the rear passenger's side window. McCutchen had slid over and was now in the center of the backseat. McCutchen banged her head on the metal grate between the front and back seats of the patrol car. Officer Olivarri radioed the dispatcher and said, "be advised my prisoner is banging her head on the wall." McCutchen then said, "Motherf—er, you [] don't think I'll get out."[1] Next, McCutchen moved over to the seat immediately behind him, hit her head against the rear driver's side window twice causing the window to shatter. From the rearview mirror, Officer Olivarri could see McCutchen's head sticking out of the patrol car. At the time, Officer Olivarri was in the left-hand lane of traffic and, although it was twenty or thirty minutes after midnight, there were still many vehicles on the highway. The patrol car was traveling at sixty or sixty-five miles per hour. Officer Olivarri's first thought was that McCutchen was going to jump out of the patrol car and fall onto the highway. The situation was dangerous for him, but even more dangerous for McCutchen. Officer Olivarri turned on his overhead lights and siren, and moved over to the right hand shoulder of the highway and stopped. Officer Olivarri also radioed for assistance.

In his driver's side mirror, Officer Olivarri saw McCutchen wriggling out of the car through the shattered window headfirst. Her torso was resting on the windowsill and her head was facing down. He could also see cars approaching quickly, and therefore, could not get out of the car immediately. In addition, there was a curve in the road immediately behind the location where the patrol car was parked. When there was a break in the traffic, Officer Olivarri stepped out of the patrol car. Officer Olivarri noticed the shoulder of the road where he was stopped was quite narrow. As he stepped out, Officer Olivarri's foot was over the white line that demarcated the shoulder. Officer Olivarri stepped into the highway, went to where McCutchen was hanging

---

[1]At another point in his testimony, Officer Olivarri remembered McCutchen's statement as, "Motherf—er, you don't think I can get out."

out of the window, and told McCutchen to get in the car three or four times,[2] then he saw two eighteen-wheelers approaching. McCutchen was "thrashing around pretty wildly," so Officer Olivarri put his hands on top of her head to push her back into the patrol car, while commanding her to do so. Nevertheless, McCutchen was still attempting to get out of the car. At this point, Officer Olivarri was on the highway in the right lane of traffic. Pushing McCutchen on the top of the head with his open hand wasn't working, so Officer Olivarri used his closed fist to hit McCutchen two or three times on the top of her head, and she fell back into the car. Then, to avoid the being hit by an approaching eighteen-wheeler, Officer Olivarri sidestepped to the area behind the patrol car and leaned his body forward over the trunk. Again, he radioed the dispatcher for help, emphasizing the urgency of the situation. As Officer Olivarri stood behind the patrol car, he saw McCutchen trying to get out of the car again. Again, McCutchen was thrashing wildly and coming out of the patrol car headfirst. When there was another break in traffic, Officer Olivarri returned to the driver's side back seat window and warned McCutchen to get back in the car or he would hit her again. When McCutchen did not comply, Officer Olivarri hit her two or three more times and she fell back into the car. Again, Officer Olivarri retreated to the shoulder area behind the patrol car. Officer Olivarri testified that if he had not forced McCutchen back into the patrol car, she would have fallen onto the highway and been hit.

Next, McCutchen attempted to get out of the same window feet first. When Officer Olivarri first saw McCutchen's ankles coming out of the window several cars were approaching; therefore, he leaned over the trunk of the car and used his ASP baton[3] to strike at McCutchen's feet. This action caused McCutchen to bring her feet back into the car. This retreat, however, was

---

[2]He told her, "Get back in the vehicle. Get back in the f—ing vehicle. If you don't get back in the vehicle, I'm going to punch you."

[3]An expandable baton or club.

temporary. McCutchen tried to get out of the car yet again, and this time was able to extend her legs out of the window to about the knee area. Because there was a break in the traffic, Officer Olivarri ran over to the window, told McCutchen to get back in the car, and used his ASP baton to hit her legs. In response, McCutchen momentarily pulled her legs back into the car. Officer Olivarri then went to the back of the patrol car to get out of the way of approaching traffic. But McCutchen persisted and pushed her legs through the window so her torso was resting on the window frame and her feet were almost touching the ground. Again, when there was a break in the traffic, Officer Olivarri ran over to the window and pushed McCutchen's legs and body back into the car.

At this point, another uniformed officer, Michael Wesner, arrived on the scene. Officer Wesner saw Officer Olivarri standing in the right lane of traffic trying to push McCutchen's legs, which were kicking the officer, back into the patrol car. Officer Wesner parked his patrol car on the shoulder about ten feet behind Officer Olivarri's patrol car and went to the rear passenger-side door of Officer Olivarri's patrol car, which was parked very close to a cement wall. Although the space was very narrow, Officer Wesner opened this door, got into the back seat, grabbed McCutchen by her biceps, and attempted to slide McCutchen across the back seat of the patrol car and lift her out of the car. According to Officer Wesner, he decided on this course of action because there was a great deal of traffic on the roadway and he feared a truck or another vehicle would come around the curve and hit Officer Olivarri.

When McCutchen noticed Officer Wesner's presence, she kicked him on the forehead, causing him to fall backwards against the car door. The kick surprised Officer Wesner and caused redness on his forehead. Nevertheless, Officer Wesner was eventually successful in

pulling McCutchen out of the back seat of the patrol car. By this time, Officer Olivarri had come around to the passenger side of the patrol car to assist Officer Wesner.

The two officers brought McCutchen, who was still handcuffed, to the area behind Officer Olivarri's patrol car. McCutchen was thrashing her body, kicking her feet, and using profanity, and the officers had difficulty restraining her. McCutchen was on the ground. Officer Olivarri punched her several times on the side or stomach area, "to get the fight out of her." Officer Wesner noticed that as McCutchen continued to kick, she was again causing Officer Olivarri to go into the road where there was approaching traffic. To get her to stop thrashing and to gain instant compliance, Officer Wesner punched McCutchen in the nose twice. When he attempted to punch her a third time, she moved her face and his fist hit the pavement. Finally, the officers were able to roll McCutchen onto her stomach and pin her down.

A third San Antonio police department officer, Bryan Cox, arrived on the scene. He saw McCutchen on the ground on her stomach with Officer Wesner sitting on her upper torso and holding her down. McCutchen was still kicking and flailing. Officer Cox retrieved some leg irons from his car. Once the leg irons were placed on McCutchen, she was turned over onto her back. The struggle on the highway took only about two to three minutes, although to Officer Olivarri it seemed much longer.

McCutchen was initially transported to the Brady-Green clinic, and later to University Hospital for more extensive medical treatment. Upon her arrival at the hospital, McCutchen appeared to be sleepy and "kind of dazed." The physician who treated McCutchen in the emergency room stated he did not know the cause of McCutchen's sleepiness, so "that's why we [ran] all these tests so we [could] try to figure out exactly what's going on to the best of our

ability." The physician ordered a "CT"[4] scan of McCutchen's head, face, and neck, which revealed she had broken facial bones. He also ordered toxicology tests, which showed McCutchen was positive for cocaine, amphetamine, marijuana, and alcohol.

While McCutchen was at the hospital, she told a nurse that she had bought a bag of methamphetamine that cost $2,000.00. She also said she had been doing cocaine, marijuana, methamphetamine, and alcohol. According to Officer Olivarri, the use of methamphetamine explained why McCutchen seemed to feel no pain and was so strong and uncontrollable. While at the hospital, McCutchen apologized to Officer Olivarri for breaking his patrol car window and for her other conduct.

Two photographs of McCutchen taken on September 6, 2007, were admitted into evidence. These photographs showed both of McCutchen's eyes were badly bruised and the bridge of her nose was swollen. One eye was also swollen shut. Abrasions on McCutchen's cheek and forehead were also visible.

In addition, the evidence showed McCutchen filed a complaint with the police department, alleging the officers used excessive force against her. The police department conducted an internal affairs investigation, which resulted in Officer Olivarri being reprimanded for not fastening McCutchen's seat belt. No other disciplinary action was taken. The evidence also showed McCutchen filed a civil suit in federal court against the officers.

## MOTION TO SUPPRESS

In her first and second points of error, McCutchen argues the trial court erred in denying her motion to suppress. Specifically, McCutchen argues the trial court erred when it denied her motion to suppress because her arrest was without a warrant and not based on probable cause. McCutchen's suppression motion was carried with the trial. At trial, multiple witnesses testified

---

[4] Computed tomography. TABER'S CYCLOPEDIC MEDICAL DICTIONARY 554 (21st Ed. 2009).

for the State. No witnesses testified for the defense. No findings of fact and conclusions of law were filed.

In reviewing a trial court's ruling on a motion to suppress, we review the evidence in the light most favorable to the trial court's ruling. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. (Tex. Crim. App. 2007). When the trial court fails to make explicit findings of fact, we imply fact findings that support the trial court's ruling so long as the evidence supports these implied findings. *Id.* We afford almost total deference to the trial court's determination of the historical facts that the record supports, especially when its implicit fact finding is based on an evaluation of credibility and demeanor. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). Thus, the party that prevailed in the trial court is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *Id.*

In Texas, a person may be arrested without a warrant only if (1) there is probable cause, and (2) the arrest falls within the provision of one of the statutes authorizing a warrantless arrest. *Moss v. State*, 75 S.W.3d 132,137-38 (Tex. App.—San Antonio 2002, pet. ref'd). As to the first requirement, the test for determining the existence of probable cause for a warrantless arrest is whether at that moment the facts and circumstances within the officer's knowledge and of which he had sufficient trustworthy information were sufficient to warrant a prudent man in believing the arrested person had committed or was committing an offense. *Id.* at 138. A person commits the offense of public intoxication if the person appears in a public place while intoxicated to the degree that the person may endanger herself or another. TEX. PENAL CODE ANN. § 49.02 (Vernon 2003). As to the second requirement, a peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view. TEX. CODE CRIM. PROC. ANN. art. 14.01(b) (Vernon 2005).

Here, the evidence shows that the arresting officer, Olivarri, knew that McCutchen had been at a dance hall where she became so intoxicated that EMS was called to treat her for possible alcohol poisoning. Officer Olivarri talked to the paramedics, who informed him McCutchen was intoxicated. Officer Olivarri noticed McCutchen smelled strongly of alcohol and saw her bloodshot eyes. Officer Olivarri saw that when McCutchen was told she could not re-enter the dance hall, she threatened to urinate in the parking lot and began to unbutton her pants. Officer Olivarri instructed McCutchen to sit on a curb because she appeared to be very unsteady on her feet and susceptible to falling and injuring herself. Instead of following the officer's instructions to remain on the curb while waiting for her mother to come pick her up, however, McCutchen took off running through the parking lot at night. Cars were driving in the parking lot, so McCutchen's conduct was dangerous. The second time McCutchen took off running through the parking lot, Olivarri arrested her for public intoxication.

Viewed in the light most favorable to the trial court's ruling, the record shows that at the time Olivarri arrested McCutchen he had probable cause to believe she had committed the offense of public intoxication. *See White v. State*, 714 S.W.2d 78, 79-80 (Tex. App.—San Antonio 1986, no pet.) (holding facts and circumstances surrounding appellant's arrest created probable cause for arrest for public intoxication when the appellant rendered himself subject to potential danger by being in an intoxicated condition in a parking lot of a public place, where it was reasonable to assume that cars would travel in and out). The record further shows McCutchen's warrantless arrest was authorized because the public intoxication was committed in his presence. We conclude the trial court did not err in denying McCutchen's motion to suppress. McCutchen's first and second points of error are overruled.

**STATE'S REFUSAL TO CONSENT TO JURY WAIVER**

In her third point of error, McCutchen argues the trial court erred in allowing the State to refuse to waive a jury trial "on an improper basis." According to McCutchen, the State insisted on a jury trial because she had held press conferences about her arrest, publicized her treatment by the officers, and filed a civil suit against the officers in federal court. McCutchen asks this court to correct the error by reversing and remanding to the trial court for a new trial in which she would be allowed to waive a jury. In response, the State argues the trial court had a ministerial duty to conduct a jury trial under the circumstances presented in this case.

Article 1.13(a) of the Texas Code of Criminal Procedure provides that a defendant in a criminal prosecution for a non-capital offense "shall have the right, upon entering a plea, to waive the right of trial by jury, conditioned, however, that such waiver must be made in person by the defendant in writing in open court with *the consent and approval of the court, and the attorney representing the State.*" TEX. CODE CRIM. PROC. ANN. art. 1.13 (a) (Vernon 2005) (emphasis added). The Court of Criminal Appeals has held a trial judge "does not have the discretion to serve as a factfinder in the trial of a misdemeanor case absent the consent and approval of the State as prescribed by Art. 1.13(a) [] to the accused's waiver of jury trial." *State ex rel. Curry v. Carr*, 847 S.W.2d 561, 562 (Tex. Crim. App. 1992) (conditionally granting mandamus directing the trial judge to set aside order denying State's request for a jury trial in a misdemeanor case).

In the present case, the reporter's record shows that immediately before trial, defense counsel raised the issue of the State's refusal to consent to McCutchen's jury trial waivers.[5]

---

[5]The clerk's record contains waivers of jury trial for each charged offense, which are signed by McCutchen and her counsel. The clerk's record also contains the State's requests for a jury trial on each charged offense. The State's requests provide, "[t]he State does not consent to the Defendant's waiver of a jury trial and asks the case be presented to a jury as a factfinder of guilt/innocence."

Defense counsel informed the trial court that McCutchen was in a difficult position, and that, after reviewing the evidence and the facts, he had advised McCutchen that a plea of guilty or nolo contendere was probably in her best interest. According to defense counsel, he had proposed a plea bargain agreement with a punishment of deferred adjudication to the State, but the prosecutor refused to consider this type of plea bargain agreement. Defense counsel asserted McCutchen was being treated differently from other similarly situated defendants, who would in all likelihood have been offered a plea bargain or have been able to enter an open plea and sentenced to deferred adjudication. Defense counsel also stated, "We're willing to plead guilty or no contest. We wanted to plead no contest and leave it to the Judge's discretion whether she deserved deferred adjudication or not. The prosecution has objected to this and refuses to consent to [] waive a jury trial. We disagree whether that right is afforded to them under the Code…" Defense counsel further asserted that the reason the State was refusing to consent to McCutchen's waiver of jury trial was because a finding of guilt would be detrimental to her civil suit against the officers.

In response, the prosecutor denied the State was refusing to waive a jury trial because of the civil suit against the officers. According to the prosecutor, the State was not being malicious, but was simply acting within the bounds of the law. The prosecutor pointed out that the State had the right to withhold its consent to a waiver of jury trial under article 1.13(a) of the Texas Code of Criminal Procedure. The prosecutor advised the court that McCutchen had never agreed to plead guilty and there was no plea bargain agreement. Additionally, the prosecutor said the State's position was that neither an open plea of guilty nor deferred adjudication was in the community's best interest. Finally, the prosecutor stated that if McCutchen was being treated differently from other defendants it was because she set herself up to be treated differently by

publicizing the incident. The prosecutor emphasized that a jury trial would be important to setting the record straight in this case.

The crux of McCutchen's argument on appeal is that the State insisted on a jury trial for an "ignoble and unreasonable purpose" and, therefore, the trial court should not have allowed the State to withhold its consent to her jury trial waivers. In support of this argument, McCutchen cites *Singer v. United States*, a case in which the defendant offered in writing to waive his right to trial by jury, but the federal prosecutor refused to give his consent pursuant to Rule 23(a) of the Federal Rules of Criminal Procedure. 380 U.S. 24, 25 (1965). The defendant was subsequently tried and convicted by a jury. *Id.* The Supreme Court held that the federal constitution neither confers nor recognizes a right of criminal defendants to have their cases tried before a judge alone. *Id.* at 26. The Supreme Court also stated:

> … Rule 23(a) does not require that the Government articulate its reasons for demanding a jury trial at the time it refuses to consent to a defendant's proffered waiver. Nor should we assume that federal prosecutors would demand a jury trial for an ignoble purpose. *We need not determine in this case whether there might be some circumstances where a defendant's reasons for wanting to be tried by a judge alone are so compelling that the Government's insistence on trial by jury would result in the denial to a defendant of an impartial trial.* Petitioner argues that there might arise situations where "passion, prejudice * * * public feeling" or some other factor may render impossible or unlikely an impartial trial by jury. However, since petitioner gave no reason for wanting to forgo jury trial other than to save time, this is not such a case, and petitioner does not claim that it is.

*Id.* at 37-38 (emphasis added).

McCutchen cites *Singer* to support her contention that the trial court may disregard the State's lack of consent to a jury trial waiver under certain circumstances. As the previous excerpt illustrates, however, the Supreme Court never reached this issue in *Singer*. *See id.* at 36 (holding a defendant's jury trial waiver may be conditioned on the approval of the Government). We additionally note it is apparent from the record that McCutchen's reason for wanting to forgo a

jury trial was not based on any concern about receiving an impartial trial, but rather was based on the fact that she wanted the opportunity to go before the trial judge with a plea bargain. The record makes clear, however, that the State was not interested in pursuing a plea bargain. Further, McCutchen urges us to presume the State's motive in withholding its consent was ignoble and unreasonable. We decline to do so. The statements made by the prosecutor explaining why the State refused to waive a jury trial do not indicate an ignoble or unreasonable purpose.

We conclude the trial court did not err in conducting a jury trial in this case. McCutchen's third point of error is overruled.

### OFFICER'S TESTIMONY ON DRIVER REACTION TIME

In her fourth point of error, McCutchen argues the trial court erred in permitting Officer Kevin Luzius to testify about driver reaction time at the site where Officer Olivarri stopped his patrol car. McCutchen argues the trial court erred in allowing Officer Luzius's testimony as either an expert or a lay witness.

Here, after asking some questions about his training in accident reconstruction, the State moved to qualify Officer Luzius as an expert. In response, defense counsel objected to Officer Luzius's testimony for (1) lack of notice that Officer Luzius would be testifying as an expert, and (2) lack of personal knowledge as required under Rule 602 of the Texas Rules of Evidence.[6] When defense counsel asked to voir dire Officer Luzius on his qualifications, the State indicated it was not offering Officer Luzius as an expert and he was testifying about what he did in this

---

[6]Rule 602 states,

> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness. This rule is subject to the provisions of Rule 703, relating to opinion testimony by an expert witness.

TEX. R. EVID. 602.

case. The State further indicated there should be no voir dire. The trial court then stated, "Just let him testify as an officer." The trial court then allowed Officer Luzius to testify.

Officer Luzius testified he was very familiar with the area where Officer Olivarri stopped the patrol car on September 6, 2007. He said that this stretch of highway was very dangerous for a pedestrian or a stopped car. Officer Luzius made a scaled diagram of the area where Officer Olivarri stopped the patrol car. Officer Luzius calculated the time a driver would have had to take an evasive action if he had come around the corner and saw someone in the highway where Officer Olivarri was on September 6, 2007. Utilizing mathematical formulas, Officer Luzius determined that a driver driving at sixty miles per hour and approaching the site in question would have had 1.13 seconds to take evasive action, and a driver driving at fifty miles per hour and approaching the site in question would have had 1.66 seconds to take evasive action. Officer Luzius further testified that 1.13 seconds was not enough time for a car approaching the site in question to come to a complete stop.

Texas Rule of Evidence 701, which governs the admission of opinion testimony by lay witnesses, provides, "[i]f a witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences that are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." TEX. R. EVID. 701. To satisfy the first of these requirements, the proponent of the witness's testimony must show that the witness has personal knowledge of the events on which his opinion is based and that this opinion is rationally based on that knowledge. *Fairow v. State,* 943 S.W.2d 895, 898 (Tex. Crim. App. 1997) (holding trial court did not abuse its discretion in excluding lay witness opinion testimony as to culpable mental state). The Court of Criminal Appeals further explained in *Fairow*,

> The perception requirement of Rule 701 is consistent with the personal knowledge requirement of Rule 602. It requires the proponent of lay-opinion testimony to establish that the witness has personal knowledge of the events upon which his opinion is based. Personal knowledge will often come directly from the witness's senses. It may, however, come from experience. If the proponent of the opinion cannot establish personal knowledge, the trial court should exclude the testimony.

943 S.W.2d at 898 (citations omitted).

Texas Rule of Evidence 702, which governs the admission of expert testimony, provides, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702. Before a trial court admits expert testimony, three requirements must be met: (1) the witness must qualify as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony must be an appropriate one for expert testimony; and (3) admitting the expert testimony must actually assist the fact-finder in deciding the case. *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006).

A police officer may sometimes testify about opinions using his personal training and first-hand experience without being qualified as an expert under Rule 702. *See Osbourn v. State*, 92 S.W.3d 531, 536 (Tex. Crim. App. 2002) ("[A]lthough police officers have training and experience, they are not precluded from offering lay testimony regarding events which they have personally observed."). Thus, depending on the circumstances, a police officer may testify as an expert witness, a lay witness, or both. *See Hollis v. State*, 219 S.W.3d 446, 467 (Tex. App.—Austin 2007, no pet.) (holding it was not necessary to qualify a narcotics officer as an expert because his testimony that manufacturing methamphetamine often causes blisters and discoloration on the manufacturer's hands was based on his personal observation and was helpful

to the jury); *Thomas v. State*, 916 S.W.2d 578, 580-81(Tex. App.—San Antonio 1996, no pet.) (holding police officer qualified as both lay and expert witness).

The admission of evidence in violation of an evidentiary rule is non-constitutional error. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). An appellate court must disregard non-constitutional error that does not affect a defendant's "substantial rights." TEX. R. APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Substantial rights are not affected by the erroneous admission of evidence if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

Here, the State argues, among other things, that any error in the admission of Officer Luzius's testimony was harmless. We agree with the State. Assuming, without deciding, that it was error to admit Officer Luzius's testimony, the record as a whole shows Officer Luzius's testimony had a slight effect, if any, on the jury's verdict.

The purpose of Officer Luzius's testimony was to show the dangerous nature of the events that took place on the highway on September 6, 2007, and to explain the officers' use of force to subdue McCutchen. Similar evidence was admitted for the same purpose without objection. According to the testimony of the other officers in this case, McCutchen's attempted escape from the patrol car and her subsequent uncontrollable conduct when the patrol car was stopped on Interstate Highway 35 were extremely dangerous because of the narrow shoulder, the heavy traffic, the high speeds, the curve in the road, and the limited visibility. Several photographs of the shoulder and highway where the incident took place were also admitted into

evidence. From these photographs, the jury could have inferred that the September 6, 2007, incident was extremely dangerous for both Officer Olivarri and McCutchen.

The primary issue in this case was whether McCutchen committed the offenses of criminal mischief, attempted escape, and resisting arrest. The evidence from other sources showing McCutchen committed these offenses was overwhelming.

We, therefore, conclude any error in admitting Officer Luzius's testimony was harmless. *See* TEX. R. APP. P. 44.2(b). We overrule McCutchen's fourth point of error.

### TOXICOLOGY REPORT TESTIMONY

In her fifth and sixth points of error, McCutchen argues the trial court erred in allowing her treating physician to testify about a toxicology report showing alcohol, cocaine, amphetamine, and marijuana in her blood. McCutchen contends her physician's testimony about the toxicology report was inadmissible because (1) it was hearsay, (2) it violated Rule 403 of the Texas Rules of Evidence, and (3) it violated her right to confront the witnesses against her.

McCutchen argues her fifth and sixth points of error together in her brief. Virtually all of McCutchen's authority and argument focuses on her confrontation clause complaint. McCutchen cites no authority, nor does she argue, the physician's testimony should have been excluded because it was hearsay. McCutchen cites no authority and makes only a cursory argument that the physician's testimony should have been excluded because it violated Rule 403 of the Texas Rules of Evidence.[7] Thus, to the extent McCutchen asserts the physician's testimony should have been excluded because it was hearsay and violated Rule 403 of the Texas Rules of

---

[7]McCutchen's entire Rule 403 argument is,

"[t]he doctor was able to tell the jury all the drugs found in her system. Not only was this irrelevant to the case at hand, it was highly prejudicial under [Rule] 403, as objected to by counsel. Without this information, no rational jury would have believed Officer Olivarri['s] and Officer Wesner's recitation of Appellant's super human strength and her agility 'like a gymnast'…"

Evidence, nothing is presented for our review. *See Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000) (failure to present any argument or authority on appeal waives the complaint); TEX. R. APP. P. 38.1(i) (requiring appellant's brief to contain clear and concise argument for the contentions made, with appropriate citations to authorities).

On appeal, the State argues McCutchen's confrontation clause complaint is not preserved because she did not obtain a pre-trial ruling or a ruling outside the presence of the jury on this issue. We disagree. The record indicates that in a hearing outside the jury's presence, McCutchen objected to the physician's testimony about the toxicology report on the basis that "[h]e did not administer the toxicology report." At the end of the hearing outside the jury's presence, the trial court stated it would allow the physician's testimony. Later, immediately before the physician testified about the toxicology report, McCutchen again objected, referencing her prior objections. The trial court, nevertheless, allowed the physician to testify. We conclude McCutchen obtained a ruling on her objection, and therefore, preserved her confrontation clause complaint for review. Thus, we consider the merits of McCutchen's confrontation clause complaint.

In *Crawford v. Washington*, the United States Supreme Court held a defendant's right to confrontation under the Sixth Amendment is violated when a witness is permitted to relate out-of-court "testimonial" hearsay statements unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. 541 U.S. 36, 59 (2004). "The primary focus in determining whether a hearsay statement is 'testimonial' is upon the objective purpose of the interview or interrogation, not upon the declarant's expectations." *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008). Thus, statements are testimonial only when "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Berkley v. State*, 298 S.W.3d 712, 715 (Tex. App.—San Antonio

2009, pet. ref'd) (quoting *Davis v. Washington*, 547 U.S. 813, 822 (2006)). Consistent with this reasoning, medical records created for treatment purposes are not testimonial within the meaning of *Crawford*. *Id.* (citing *Melendez-Diaz v. Massachusetts*, 129 S.Ct. 2527, 2533 n.2 (2009)).

Here, the record shows that the purpose of the toxicology report was to render medical treatment to McCutchen. The emergency room physician testified that the toxicology testing was routine under the circumstances. He emphasized that McCutchen had facial and head injuries and was drowsy. He also stated the toxicology testing was performed so he could decide the proper course of treatment. We, therefore, conclude the trial court did not err in allowing the emergency room physician to testify about the toxicology report. *See Berkley*, 298 S.W.3d at 715 (holding the trial court did not err in admitting nurse's report of sexual assault examination). McCutchen's fifth and sixth points of error are overruled.

## JURY INSTRUCTION

In her seventh point of error, McCutchen argues the trial court erred in failing to instruct the jury in accordance with article 38.23 of the Texas Code of Criminal Procedure, which authorizes the jury to disregard any evidence it concludes was obtained illegally. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005). At the charge conference, McCutchen asked for a jury instruction under article 38.23 regarding her "unlawful arrest" for public intoxication. The State opposed the requested instruction, maintaining that in order to be entitled to such an instruction there had to be a conflict in the evidence concerning the lawfulness of the arrest. The State further argued there was no conflict in the evidence concerning probable cause for McCutchen's arrest.

Article 38.23 requires a jury instruction only if there is a genuine dispute about a material fact. *Oursbourn v. State*, 259 S.W.3d 159, 177 (Tex. Crim. App. 2008); *Bell v. State*, 938 S.W.2d

35, 48 (Tex. Crim. App. 1996). A defendant must establish three foundation requirements to trigger an Article 38.23 instruction: (1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) the contested factual issue must be material to the lawfulness of the challenged conduct. *Oursbourn*, 259 S.W.3d at 177. This factual dispute can be raised only by affirmative evidence, not by mere cross-examination questions or argument. *Id.*; *Holmes v. State*, 248 S.W.3d 194, 199-200 (Tex. Crim. App. 2008). The legality of an arrest is a question of law, not fact, when the essential facts concerning the arrest are not in dispute. *McRae v. State*, 152 S.W.3d 739, 748 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd).

Here, the evidence heard by the jury did not raise an issue of fact about the existence of probable cause for McCutchen's arrest. The facts surrounding the existence of probable cause for McCutchen's arrest for the offense of public intoxication were not affirmatively contested. The uncontested evidence shows that at the time of her arrest McCutchen was intoxicated, was in a public place, and was a danger to herself. *See McRae*, 152 S.W.3d at 748 (holding trial court did not err in refusing article 38.23 instruction when only arresting officer testified about the circumstances surrounding the arrest and no facts were in dispute). Thus, we conclude the trial court did not err in refusing McCutchen's article 38.23 instruction. McCutchen's seventh point of error is overruled.

## DUE PROCESS

In her eighth point of error, McCutchen argues her "rights to due process were violated by the officer's blatant disregard of the law by not seatbelting [her], and beating [her] into submission by beating her with a closed fist in the face, striking her about her head and face with

an ASP club, and punching with a closed fist, which resulted in significant head injuries."

McCutchen further argues her

> rights to due process, and to be treated in a humane and responsible manner were violently violated. Indeed her very trial was poisoned by the State's abusive techniques in forcing her to go to trial so as to protect the vicious officer from the civil suit she had filed against him and the City of San Antonio. All of this occurred because [McCutchen] got up and needed to go to the bathroom. This Court must reverse and either acquit [McCutchen] due to the illegal arrest, or at the very least, reverse and remand for a new trial.

McCutchen's eighth point of error does not complain of any ruling or action on the part of the trial court. Additionally, we have already addressed and overruled McCutchen's contention that her motion to suppress should have been granted because her arrest was illegal. We, therefore, overrule McCutchen's eighth point of error.

## CONCLUSION

Having overruled all of the points of error before us, the judgments of the trial court are affirmed.

Karen Angelini, Justice

PUBLISH